# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BIJOU INTERNATIONAL CORPORATION,**
  **Plaintiff,**

  **v.**                                    **Case No. 09C0352**

**KOHL'S DEPARTMENT STORES INC,**
  **Defendant.**

---

## <u>ORDER</u>

Plaintiff Bijou International Corporation, a manufacturer of jewelry, entered into an agreement with defendant Kohl's Department Stores Inc. to supply jewelry. The parties' relationship deteriorated, and they asserted various contract claims against each other. I granted defendant's motion for summary judgment in part, and plaintiff now moves for reconsideration.

A motion for reconsideration serves a limited purpose and should be used only to present newly discovered evidence or to correct manifest errors of law or fact. <u>Moro v. Shell Oil Co.</u>, 91 F.3d 872, 876 (7th Cir. 1996). It is not an opportunity for a party to reargue previously rejected arguments or introduce evidence that should have been presented prior to judgment. <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000).

Plaintiff claims that defendant breached the parties' contract by canceling purchase orders for its Simply Vera ("SV") Vera Wang line of Jewelry. Defendant argues that the terms of the purchase orders ("PO Terms") allowed it to cancel the orders because plaintiff

failed to timely deliver jewelry conforming to approved merchandise samples. I agreed with defendant.[1]

Plaintiff now moves to reconsider on three grounds. First, it attempts to interpret the PO Terms, arguing that the merchandise sample to which the jewelry had to conform was something other than the samples defendant identified. However, plaintiff failed to present this argument at the summary judgment stage and, therefore, waived it. I will not consider it at this late stage. Brooks v. City of Chicago, 564 F.3d 830, 833 (7th Cir. 2009). Second, plaintiff claims that it could have modified its tortoise jewelry to conform to the samples (although it is not clear which samples it refers to). Even assuming that plaintiff could have done this, plaintiff fails to show that it could have delivered conforming jewelry by the delivery date. Plaintiff raised the possibility of modifying the non-conforming tortoise jewelry at a February 5, 2008 meeting with defendant. However, by that time plaintiff could not have delivered any jewelry by the required ship date, a fact which plaintiff acknowledges:

> On February 5, 2008 Bijou and Kohl's modified their agreement. One of the
> modifications was recognition that Bijou would not be able to deliver by the
> ship date deadline because factories in China were closed for the Chinese
> New Year and would not re-open until after the ship date deadline.

---

[1] Nonetheless, I denied defendant's request for summary judgment finding that there were disputed issues of fact concerning whether defendant agreed to allow plaintiff extra time to cure the non-conformities.

(Dkt. No. 100, Plaintiff's Proposed Finding of Facts ¶ 53.) Thus, this argument fails. Third, plaintiff claims that defendant approved the gold finish on its jewelry. However, even assuming this were true, defendant still could have canceled the purchase orders. Regardless of the condition of the gold finish, the fact that the tortoise line of jewelry was non-conforming combined with the fact that plaintiff could not timely deliver gave defendant the right to cancel the order.

Plaintiff also asks that I reconsider my finding that defendant had a contractual right to profitability assistance on the Apartment 9 ("Apt. 9") jewelry. Plaintiff contends that defendant waived any such right, but I disagree. As the party seeking to establish a waiver, plaintiff must show that defendant voluntarily and intentionally relinquished a known right. Brunton v. Nuvell Credit Corp., 325 Wis. 2d 135, 156 (2010). Where the facts and circumstances surrounding the parties' conduct are clearly established, the intent to waive a right becomes a question of law. See Rural Mut. Ins. Co. v. Peterson, 134 Wis. 2d 165, 180 (1986).

The relevant facts are as follows: defendant offered to settle their outstanding disputes over both the Apt. 9 and SV jewelry. It proposed that: (1) defendant would cancel all orders for SV jewelry; (2) plaintiff's obligation for the return to vendor jewelry would be reduced to $384,000, thereby entitling it to a refund of $75,000 because it has already paid $460,000; (3) the $75,000 would in turn be credited against defendant's claim for $398,000 in profitability assistance on the Apt. 9 jewelry, resulting in plaintiff owing $323,000; (4) defendant would then reduce its demand for profitability assistance to a $117,000 credit

against the upcoming March 2008 Apt. 9 shipment, which would be the last shipment.[2]

Defendant would not be liable for cancelling the SV purchase order. Defendant also stated

that it would forego the $117,000 credit if plaintiff agreed not to ship the March Apt. 9 order.

---

[2] Defendant's e-mail stated as follows:

To confirm our position as discussed yesterday:
We are at a point in this process that we perceive the future liability could be greater than what we know today. Based on this, we have decided to walk away from our business together for now. . .

Below is the specific proposal for both brands:
SVVW - Cancel all open orders ($4.9 M at retail). Bijou is not accountable for the fixture coop
Apt 9 - Accept delivery thru [sic] 3/15 on open orders. Jack requested we release debit assistance against this order during the call. Bijou will not be accountable for MD$ on existing product. Additionally we agreed to the following:

Bijou was responsible in Fall for:
1. Liz RTV = $460,000. . . agreed to settle to $384,000
2. Deficiency to margin plan = $398,000 . . . . agreed to settle to $325,000 based on RTV scenario above

We agreed to compromise on RTV, based on Bijou's claim it was short shipped. The compromised amount was $384,000.

$460,000 less the $384,000 = $75,000 RTV 'credit' for Bijou
margin deficiency = $398,000 - $75,000 = $323,000
We processed $117 as discussed and agreed upon against 3/15 order. As per note above, Jack requested relief on this - could only happen if he chose not to ship this order.
Bijou would not owe Kohl's the balance of $206,000, based on no future business.

Additionally, Kohl's is liable for the following:
Marketing costs already incurred for SVVW to this point.
Fixture cost for SVVW new fixture. . .
Spring sales $1.1 and GM as planned against both brands
$206 shortfall to margin plan in Fall for Apt. 9

(Haber Dec. Ex. 1, 2.)

Plaintiff did not accept defendant's offer but instead e-mailed defendant stating that it expected to be compensated for the SV jewelry order cancellation and would not pay any profitability assistance.[3] Subsequently, the parties discussed the matter in a telephone call and agreed that plaintiff would not have to make the March delivery. (Haber Dec. Ex. JH 3). Defendant confirmed this in an e-mail in which it also stated that "[t]his will mean that the $117,000 will now not be deducted, as well." (Haber Dec. ¶ 25).

No reasonable juror could infer from these facts that defendant intended to waive $323,000 in profitability assistance. The evidence establishes only that defendant attempted to settle the parties' dispute as to both the SV and Apt. 9 jewelry. As outlined above, defendant's offer to forego profitability assistance was contingent upon a release of liability for the SV cancellation. However, plaintiff refused to give defendant such a

---

[3] The e-mail from Jack Haber, plaintiff's president, stated:

I would like you to know that I am holding Kohl's fully responsible for the cancellation of the Vera Launch. . . . I expect full restitution. . . . Bijou does not support your decision and we do not accept responsibility to your failures with Apt. 9 and Simply Vera. . . . We expect you to honor the full value of the canceled order and expect you to remove the $117,000 debit, which we never agreed to.

We cannot support any additional markdown assistance. We already financed $400,000 for the unsuccessful Liz Claiborne Apt 9 Jewelry, We [sic] requested in return to take back the goods in saleable form. These goods came back damaged as stated In a previous letter.

Based on the $400,000 less the agreed $383,000, we expect a credit balance of $17,000, reflected in our account, as well as full payment on the Simply Vera orders at a cost of $1.323 million.

Please get back to me as soon as possible. We would like to move on as we are sure you would.

(Christensen Aff. Ex. 12.)

release. Therefore, at most, plaintiff could establish that defendant intended to forego $117,000 in profitability assistance. Nothing in the record indicates that it intended to relinquish the remaining $206,000.

Therefore,

**IT IS ORDERED** that plaintiff's motion to reconsider is **DENIED**.

Dated at Milwaukee, Wisconsin this 12th day of September 2011.

s/_____
LYNN ADELMAN
District Judge